# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** | |
| **Donny G. Hunt and Leah R. Hunt,** | **Bankruptcy Case No. 14-40140-JDP** |
| **Debtors.** | |

_____

# MEMORANDUM OF DECISION
_____

## *Introduction*

Two motions are before the Court, effectively presenting the different sides of the same coin. The first, filed by chapter 7[1] trustee, R. Sam Hopkins ("Trustee"), is a Motion for Turnover of Property ("the Turnover Motion"), in which Trustee seeks an order requiring the debtors Donny George Hunt and Leah Rose Hunt ("Debtors") to turn over a

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

backhoe, trencher, flat trailer, plumbing equipment and tools ("the Property") to Trustee. Dkt. No. 42. Debtors have objected to the Turnover Motion. Dkt. No. 43. The second is Debtor's Motion to Determine Property of the Estate ("Motion to Determine Property"). Dkt. No. 45. In it, Debtors ask the Court to conclude that the Property is not property of the estate and, therefore, not subject to turnover. Trustee, in turn, has objected to the Motion to Determine Property. Dkt. No. 46.

The Court conducted a consolidated evidentiary hearing concerning both motions[2] on October 6, 2015, at which the parties presented evidence, testimony, and oral argument. Dkt. No. 52. At the conclusion of the hearing, the Court took the issues under advisement and invited the parties to submit additional briefing if they so desired. *Id.* Debtors submitted a brief on October 20, 2015, Dkt. No. 53; Trustee's responsive brief was filed on October 22, 2015, Dkt. No. 55.

---

[2] Trustee argued in his objection that, under Rule 7001, Debtors' Motion to Determine Property should have been filed as an adversary proceeding. Trustee's Objection at Dkt. No. 46 at 2-3. While Trustee is likely correct, the critical issues raised in both motions are identical. Therefore, Trustee suffers no prejudice by addressing the merits of both motions in this Memorandum.

MEMORANDUM OF DECISION – 2

The Court has considered the record and evidence, the parties' arguments, as well as the applicable law.  This Memorandum constitutes the Court's findings and conclusions, and disposes of both motions.  Fed. R. Bankr. P. 7052; 9014.

*Facts*

In 2011, Donny[3] was working for Malad Plumbing, a small plumbing business, attempting to learn the plumbing trade so he could eventually acquire the business from its then-owner.  In approximately June of that year, the owner gave Donny 24 hours to purchase the business before it would be sold to another interested party.  Debtors were unable to obtain the financing necessary to make the purchase until their friend, Gary Shephard, offered to help.  As discussed below, while the nature of the agreement reached between Debtors and Shephard is unclear, it is undisputed that, with Shephard's financial assistance, Debtors' acquired Malad Plumbing.  Debtors have operated the business since then as a sole

---

[3] For clarity, the Court will refer to Debtors by their first names.  No disrespect is intended.

MEMORANDUM OF DECISION – 3

proprietorship under Donny's individual social security number .

On February 26, 2014, Debtors filed the chapter 7 bankruptcy petition commencing this case. Dkt. No. 1. At that time, Debtors were in possession of the Property and utilizing it in the operation of the business. However, Debtors did not list the Property in their personal property schedule B, but instead listed it as property held for Shephard in their Statement of Financial Affairs ("SOFA"). *Id.* As for Shephard, Debtors listed him on schedule D as a secured creditor, on schedule G as the lessor under a "rent-to-own agreement," and in their SOFA as a creditor to whom they had made payments during the 90 days prior to filing their petition. *Id.*

On April 2, 2015, at Debtors' § 341(a) meeting of creditors, Trustee asked Debtors' about their relationship with Shephard. Transcript, Exh. 200 at 8-12. While Debtors explained that their schedules correctly reflected their transactions with Shephard and the purchase of Malad Plumbing, they acknowledged that their agreement with Shephard had never been reduced to writing. *Id.* In May 2014, Trustee also received a

MEMORANDUM OF DECISION – 4

letter from Shephard explaining his understanding of the agreement with Debtors. Exh. 210. On July 1, 2015, Trustee filed the Turnover Motion. Dkt. No. 42.

At the evidentiary hearing, Leah was the only witness to testify. In addition to the § 341(a) meeting transcript, Shephard's letter, and a ledger showing the payments made in 2014 by Debtors to Shepard, Exh. 211, Trustee offered other evidence concerning the nature of Debtors' interest in the Property. This included a portion of Debtors' 2012 federal income tax returns, which showed that Debtors claimed a depreciation deduction for the backhoe and trencher, two pieces of the Property, that year. Exh. 205. Leah also testified at the hearing that Debtors are listed as "owners" on the title certificates of two other vehicles acquired in the purchase of Malad Plumbing, with Shephard listed as a lienholder creditor on the vehicles.[4]

---

[4] The title documentation regarding these vehicles was not offered into evidence. While Trustee presented a written report from the Idaho Department of Motor Vehicles for one of the vehicles to Leah, this document was never offered as an exhibit into evidence. However, Leah did confirm that the DMV report accurately listed Debtors as the owners of, and Shephard as a secured

MEMORANDUM OF DECISION – 5

*Analysis and Disposition of the Issues*

**I.**

Relying on this evidence, in their brief, Debtors argue that their arrangement with Shephard constitutes a finance lease under Idaho law. Debtors' Post-trial Brief at 2 , Dkt. No. 53. As such, they contend, until they complete payments to him,[5] the Property belongs to Shephard, is not property of the bankruptcy estate, and is not subject to turnover. They insist that the fact that they are listed as owners on the title certificates of the two vehicles does not evidence their ownership of the Property because they agreed with Shephard to treat the titled vehicles differently for insurance purposes.

Trustee argues that the Property was owned by Debtors when they filed their bankruptcy petition, and as property of the estate, it must be turned over to him to liquidate. Concerning their Malad Plumbing deal,

---

creditor for one of the vehicles, and that a DMV report for the second vehicle would reflect the same information.

[5] The loan ledger shows that, as of the end of December 2014, Debtors owed Shepard approximately $ 68,000. Exh. 211.

MEMORANDUM OF DECISION – 6

he contends that Shephard loaned Debtors the money to buy the business and the Property. In the alternative, even assuming the arrangement between them is a lease, under Idaho law, Trustee contends it is not a true lease, but a disguised security interest.

## II.

The Code provides the roadmap for resolution of the issues. Section 542 provides that an "entity . . . in possession . . . of property that the trustee may use, sell, or lease under section 363 . . . shall deliver to the trustee . . . such property[.]" A trustee may only use, sell, or lease property of the estate. *See* § 363(b)(1). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). Thus, it follows that Trustee is entitled to the turnover of the Property only if the Debtors had a legal or equitable interest in it when they commenced their bankruptcy case.

State law determines the existence and scope of a debtor's interest in property. *In re Reed*, 940 F.2d 1317, 1332 (9th Cir. 1991) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)). A debtor's interest in property is

MEMORANDUM OF DECISION – 7

determined upon the filing of the bankruptcy petition and becomes part of the bankruptcy estate at that time. *Id.* More specific to this case, state law is also determinative as to whether a transaction is a true lease or a disguised security interest. *In re Zaleha*, 93 IBCR 248, 248 (Bankr. D. Idaho 1993). Trustee bears the burden of proving he is entitled to turnover of property. *In re Quilling*, 14.4 IBCR 87, 89 (Bankr. D. Idaho 2014) (citing *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1200–01 (9th Cir. 2012) (citations omitted)).

### III.

Determining the nature of Debtors' interest in the Property as of the date of bankruptcy is complicated in this case because the financing agreement between Debtors and Shephard was never reduced to writing, and there is no documentation concerning the purchase of Malad Plumbing before the Court. Also, despite repeated opportunities to clearly explain the nature of these transactions, Debtors' and Shephard's account

MEMORANDUM OF DECISION – 8

of the terms of their deal are, at best, ambiguous and inconsistent.[6]  While the Court is mindful that Debtors and Shephard have all opined that they believe the Property belongs to Shephard, legal ownership in this context is not resolved based solely by the belief of the parties, but by reference to all of the facts of the case and the requirements of state law.  *See Whitworth v. Krueger*, 98 Idaho 65, 68, 558 P.2d 1026, 1029 (Idaho 1976) (finding that despite the parties labeling an agreement as a lease, the agreement was still under the purview of the UCC because its terms were

---

[6] At Debtors' § 341(a) meeting of creditors, when asked about their relationship with Shephard, Debtors' testimony was equivocal regarding their business relationship with Shephard.  At one point, they stated that he had *loaned* them money, Transcript at 8, Exh. 200; later, they stated that Shephard had purchased the business from the prior owner intending that Debtors would then repurchase it from him.  *Id.* at 10.  Leah's testimony at the hearing was also inconsistent.  When asked by Trustee's counsel if Debtors had purchased the business, she answered "yes," but she later explained that it was actually Shephard who had written the check to the previous owner, and that they were now "leasing" the Property from Shephard.

Shephard also seems confused about the nature of the parties' deal.  In his letter to Trustee, Shephard reported that he "gave [Debtors] money to purchase the business" and repeatedly referred to his financial assistance as a loan.  Letter at 1, Exh. 210.  He also stated that, once Debtors had fully repaid the "loan," he would "release all liens."  *Id.*  Despite these statements indicating theirs was a lender-borrower relationship, Shephard maintained in the letter that he currently owned the Property.  *Id.*

MEMORANDUM OF DECISION – 9

indistinguishable from a sales contract).

According to Debtors' statements at the § 341(a) meeting and Leah's testimony at the hearing, as well as Shephard's letter to Trustee, the basic terms of their deal are simple enough to discern. Debtors and Shephard intended that Debtors acquire ownership (eventually, at least) of Malad Plumbing, including the Property, from the prior owner, with funds provided by Shephard. Debtors agreed to make monthly payments to Shephard until the original amount Shephard paid the previous owner of approximately $90,000, together with 6% interest, was repaid in full. *See* Letter at 1, Exh. 210; Transcript at 11, Exh. 200. Debtors' payments have been made monthly in $1,100 increments, with approximately $68,000 still remaining to be paid as of December 2014. *See* Transcript at 8 and 11, Exh. 200; Ledger at 1, Exh. 211. Upon the completion of these payments, Shephard is to release any interest he may have in Malad Plumbing, and Debtors are to become the owners of the Property. See Letter at 1, Exh. 210; Transcript at 9, Exh. 200.

Debtors urge the Court to construe this arrangement under Idaho

MEMORANDUM OF DECISION – 10

law as a finance lease. Debtor's Post-trial Brief at 2, Dkt. No. 53. But, even if this may have been the parties' objective, the evidence shows that this cannot be the case. First, as opposed to a lease arrangement, it is just as probable that Shephard did not "purchase" Malad Plumbing from its owner, but instead merely loaned Debtors the money to do so. Debtors and Shephard have repeatedly referred to their arrangement as a "loan," and have stated that Shephard "gave [Debtors] the money" to purchase the business and its assets. These statements evidence that Shephard did not purchase the business himself, but instead, financed Debtors' purchase. If this construction of the evidence is adopted, then Debtors are the owners of the Property, and other than the liens he apparently holds on the motor vehicles, Shephard holds an undocumented security interest in the Property to secure the balance due on the debt.

But, even if the Court were to conclude that Shephard was indeed the original purchaser, for purposes of this bankruptcy case, the Property would nonetheless constitute property of the bankruptcy estate because their arrangement with Shephard, under Idaho law, was not a true lease,

MEMORANDUM OF DECISION – 11

but a disguised security interest. *See Wing Foods v. CCF Leasing(In re Wing Foods)*, 2010 WL 148637, at *4 (Bankr. D. Idaho Jan. 14, 2010) (explaining that if a lease is found to be a disguised security interest, the agreement contemplated a sale, and the debtor-lessee's interest in the property is property of the estate). As noted above, courts look to state law to determine whether a transaction is a true lease or a disguised security interest. *Zaleha*, 93 IBCR, at 248. Such determination is made "by the facts of each case." Idaho Code § 28-1-203(a). And, importantly, the language used by the parties is not controlling. *Whitworth*, 98 Idaho at 68.

While Debtors urge the Court to find that their arrangement with Shephard is a finance lease, before it can do so, it must first determine if the agreement constitutes a lease at all. Idaho Code § 28-12-103, Official Cmt. g ("For a transaction to qualify as a finance lease it must first qualify as a lease."). Idaho Code § 28-12-103(j), which defines a lease, provides that a sale is not a lease. Therefore, if the Court determines that this arrangement actually contemplated a disguised security interest, it cannot be construed as a lease or a finance lease.

MEMORANDUM OF DECISION – 12

In determining whether an agreement is a lease or a sale, Idaho Code § 28-1-203 controls. *Wing Foods*, 2010 WL 148637, at *4. That statute provides, in pertinent part:

> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>
>> (1) The original term of the lease is equal to or greater than the remaining economic life of the goods:
>> (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>> (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration upon compliance with the lease agreement; *or*
>> (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

Idaho Code § 28-1-203(b) (emphasis added). As can be seen, under this statute, if the Court determines that Debtors are obliged to make payments to Shephard for the term of the lease, and that the lease is not terminable by Debtors, it must then consider the four enumerated requirements. If any one of those four conditions is met, then the transaction is not a true

MEMORANDUM OF DECISION – 13

lease, but is instead a disguised security interest.

Here, there is no set "term" for the "lease" between Debtors and Shephard. Instead, its term is that time required for Debtors to pay the obligation to Shephard in full. The Debtors' schedules list the Shepard lease term as six years. Schedule G, Dkt. No. 1. However, Leah testified at the hearing that this was a "best case" scenario, and that the term of the agreement depended on how quickly Debtors could complete payments to Shephard. Thus, the Court finds that the obligation that Debtors are to pay for the use of the Property will continue for the full term of the lease.

As to the Debtors' ability to terminate the lease, Debtors argue that "[t]here is no evidence that . . . the lease between Debtors and Shephard is not subject to termination by the lessee," and Debtors' willingness to assume the lease, as shown in their bankruptcy schedules, shows that they have the option to terminate if they wish. Debtors Post-Trial Brief at 4, Dkt. No. 53. However, this argument is unpersuasive.

First, the Court concludes that the requirement in Idaho Code § 28-1-203(b) that the lease be "subject to termination by the lessee" is not a

MEMORANDUM OF DECISION – 14

reference to whether the lessee has the right, under the Code, to assume or reject the lease under the bankruptcy laws.  Technically, all executory leases are subject to termination by a lessee filing for bankruptcy, so this requirement would lack any real significance were Debtors' argument correct.  Moreover, courts have held that rejection of an executory lease under § 365, and termination of the lease, are not one and the same, such that Debtors' ability to reject the Shephard deal in bankruptcy is not indicative of Debtors' ability to terminate it.  *See CASC Corp. v. Milner (In re Locke)*, 180 B.R. 245, 259 (Bankr. C.D. Cal. 1995) (citing *In re Austin Dev. Co.*, 19 F.3d 1077 (5th Cir. 1994)).  Finally, in a chapter 7 bankruptcy case, it is the trustee who wields the power to assume or reject a lease, not the debtor, so Debtors' statement of their intention in their bankruptcy schedules is irrelevant.  § 365(a) (" . . . the *trustee*, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."(emphasis added)); *see also In re Tompkins*, 95 B.R. 722, 724 (9th Cir. BAP 1989) (concluding that debtors do not have standing to move for an extension of time to assume or reject because "[t]he decision to

MEMORANDUM OF DECISION – 15

assume or reject a lease in a Chapter 7 setting is solely the trustee's for a sixty day period only.")

Furthermore, while there is no direct evidence regarding the Debtors' ability to terminate the "lease" with Shephard, there is also no indirect evidence that they can do so either. And, considering the statements of the parties concerning the terms of their agreement, the Court finds that the evidence weighs in favor of finding that the Debtors could not suspend payments and walk away from their deal with Shephard. Because Debtors would not become the owners of the Property until they made full payment to Shephard of the full amount he advanced for the purchase of Malad Plumbing, it is highly improbable that Debtors could escape their obligation to pay Shephard by simply discontinuing their use of the Property. Thus, the Court finds that their "lease" was not terminable by Debtors.

Finally, it is clear from the statements of the parties that once Debtors completed payments to Shephard, they would acquire ownership of the Property for no additional consideration. *See* Transcript at 9, Exh.

MEMORANDUM OF DECISION – 16

200; Letter at 1, Exh. 210.  As this satisfies the requirements of Idaho Code § 28-1-203(b)(4), the Court concludes that the agreement between Debtors and Shephard is a disguised security interest.  As such, the agreement contemplated a sale, not a true lease, and Debtors had an interest in the Property such that it became property of the estate when they filed their bankruptcy petition.  And so, even assuming Debtors did not obtain an interest in the Property as the original purchasers of Malad Plumbing via a loan from Shephard, the Court finds that Debtors had an interest in the Property because their agreement with Shephard constitutes a disguised security interest under Idaho Code § 28-1-203(b).

This conclusion is also supported by the evidence that Trustee presented to the Court concerning ownership of the vehicles.  The Court declines to accept that Debtors had one agreement with Shephard regarding ownership of the vehicles that they titled in Debtors' names, and a different arrangement as to the remainder of the Property.  While Debtors insist that treatment of title to the vehicles was different to comply with insurance requirements, this notion is inconsistent with Leah's

MEMORANDUM OF DECISION – 17

testimony at the hearing that, had Debtors' known how to take ownership of the Property at the time of purchase by granting Shephard a lien in the Property, they would have done so. Furthermore, while it is not alone dispositive, Debtors' depreciation of the most valuable items of the Property in their tax returns is additional evidence that Debtors perceived themselves to be the owners of the Property.

On the whole record, the Court finds and concludes that Debtors held an ownership interest in the Property at the time they commenced their bankruptcy case. As a result, the Property is property of the estate, and must be turned over to Trustee.

*Conclusion*

Both rational interpretations of the facts surrounding Debtors' deal with Shephard would yield the conclusion that Debtors had an ownership interest in the Property when they filed the bankruptcy petition. Therefore, as property of the estate, it is subject to turnover. The Court

MEMORANDUM OF DECISION – 18

will enter an appropriate order.[7]

Dated: October 27, 2015

*(signature)*

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[7] This Decisions addresses, as between Debtors and Trustee, that Trustee is entitled to possession of the Property. Because Shephard was not a party to the pending motions, the Court expresses no opinion concerning his rights in the Property.

MEMORANDUM OF DECISION – 19